THE DEXTER LIME–ROCK COMPANY *v.* CHRISTOPHER C. DEXTER & others.

If the term "Dexter Ledge of Lime-Rock," used in a charter of incorporation as descriptive of the corporate property, has acquired a settled definite meaning in the community, as including certain lime-rock of definite extent, and excluding all other, such lime-rock only would be deemed to be intended by the charter, whatever might have been the general expectation of the corporators; and parol evidence is admissible to prove that the term had acquired such meaning.

If, however, the petitioners for the act of incorporation use the term, and expressly, or by plain implication, define its extent in their petition, such definition may be resorted to, to explain the meaning of the term in the charter.

The term "Great Hill or Ledge of Lime-Rock," in a deed, is to be construed, in order to ascertain its extent and limits, in the light of the circumstances attending the transaction, according to the intent of the parties, derived from the language employed by them, rather than according to geological notions, however correct, concerning the continuity and extent of the stratum of lime at the place referred to; and where the hill or ledge is described in the deed as "lying southerly from my dwelling-house," and another ledge is described in the same deed, "as lying easterly from said dwelling-house, and northerly from the driftway leading from said Great Ledge to the lime-kilns," the limits thus implied are to be observed, irrespective of the continuity and extent of the stratum of lime.

The representation of one tenant in common as to the extent of the subject of a joint conveyance by him and his cotenants cannot estop his cotenants from claiming according to their rights; nor can the representation estop him, unless acted upon by the purchaser.

BILL in equity to enjoin the defendants from quarrying lime-

30 *

stone upon their farm in Smithfield, commonly known as the Christopher Dexter farm, and for an account of the limestone already by them quarried there; the bill claiming that the complainants are the exclusive owners of the Dexter Ledge of Lime-Rock, so called, extending under said farm.

In 1761, John Dexter owned a large tract of land in Smithfield, containing a stratum of limestone, and in that year divided it into two farms, one of which, being the westerly part of said tract, he conveyed to his son Jonathan, and the other to his son William; each having, by the terms of the deeds, the free liberty to dig limestone for burning lime, in the land of the other. In 1804, the farm of William had passed by several mesne conveyances, embracing more or less of the right to dig lime-rock in both farms, to Christopher Dexter, and on the 31st day of March of that year, Jonathan conveyed to Christopher, " the full one half of all the great ledge or hill of lime-rock, situate in Smithfield aforesaid, on my homestead farm, and a little southerly from my dwelling-house, which I have or ought to have; together with one half of all the ledge of lime-rock lying easterly from said dwelling-house, and northerly from the drift-way leading from said great ledge to the lime-kilns, . . . . always excepting and reserving to myself, my heirs, and assigns forever, all the scattering lime-rock which is or may be found on my homestead farm; and further, it is the meaning and understanding of this deed, that neither the grantor nor grantee aforesaid shall sell or dispose of any of the said ledges of lime-rock, without the consent or agreement of each other."

On the same day Christopher conveyed to Jonathan, " the full one half of all the great ledge or hill of lime-rock situate in Smithfield aforesaid, on the homestead farm of the grantee, and a little southerly from said grantee's dwelling-house, which I have, or ought to have, together with one half of all the ledge of lime-rock lying easterly from said dwelling-house and northerly from the drift-way leading from said ledge to the lime-kilns, . . . . always excepting and reserving to myself, my heirs and assigns forever, all the scattering lime-rock, which is or may be found on my said homestead farm; and furthermore, it is the meaning and understanding of this deed, that neither the gran-

tor nor grantee aforesaid shall sell or dispose of any of the said ledges of lime-rock, without the consent or agreement of each other."

In 1854 the Jonathan Dexter farm had become vested in George L. Barnes, as trustee under the will of John Dexter, and in Francis G. M. Dexter, a minor, whose guardian was Israel Sayles; and the Christopher Dexter farm had become vested in Christopher W. Kelly, as assignee of Christopher C. Dexter and Amey Dexter, under a voluntary assignment for the benefit of their creditors; and in that year, upon their petition, the following act of incorporation was passed by the General Assembly : —

" *An Act to incorporate the Dexter Lime-Rock Company.*

*Whereas*, George L. Barnes, Trustee under the last will and testament of John Dexter, late of Smithfield, in the County of Providence, deceased, Israel Sayles, guardian of the person and estate of Francis M. G. Dexter, Christopher C. Dexter, and Amey Dexter, and Christopher W. Kelly assignee of said Christopher C. Dexter and Amey Dexter, all of said Smithfield, have represented to this Assembly that they are proprietors, in their individual and official capacities as aforesaid, of certain lime-rock in the following proportions, viz : The said George L. Barnes as trustee, one quarter, the said Israel Sayles, as guardian as aforesaid, one quarter, and the said Christopher C. Dexter and Amey Dexter and Christopher W. Kelly, as assignee, as aforesaid, one half, comprising, in the whole, all the Dexter Ledge of Lime-Rock, so called, situate in said Smithfield, and whereas they have represented to this Assembly that, owing to the various interests therein, the business of working the quarries, and of defining and appropriating to each proprietor his just and equal share is attended with difficulties which can be removed by legislative action, and have prayed the General Assembly to pass an act accordingly; Therefore,

" *It is enacted by the General Assembly as follows :*

" Sect. 1. The aforesaid proprietors are hereby formed into a company, by the name of the " Dexter Lime-Rock Company," and by that name shall be known in the law, sue and be sued,

defend and be defended against before all courts, and in all places, and shall have power to appoint all necessary agents and officers, and to enact and pass all such rules, regulations and by-laws as they may deem expedient for effecting the object and purposes of said company and the business thereof, provided the same are not repugnant to the laws of this state or the United States.

" Sect. 2. The property in .said lime-rock, and the proceeds thereof, shall forever be holden in three hundred and fifty-two' shares; each proprietor shall have as many votes as he has shares, and no person owning less than one share shall be entitled to a vote.

" Sect. 3. The right and interest in said lime-rock may be disposed of by will, deed, or may pass by descent, and every future proprietor shall be a member of said company so long as he or she shall hold his or her right and interest in said lime-rock, and such proprietor, and also his or her right and interest, shall at all times, and in all respects, be subject to the provisions of this act, and to the rules, regulations and by-laws of said company, made pursuant thereto.

" Sect. 4. No present or future proprietor shall ever hereafter, by himself, his agents, servants, or lessees, dig, take, burn, or in any way whatever work or dispose of any of said lime-rock, or in any manner whatever interfere with the digging, taking, burning, working, or disposing of the same, but the said lime-rock, and the proceeds thereof, shall forever hereafter be holden, considered and managed as company property, and shall, at all times, be dug, taken, burned, worked and disposed of, and managed, in all respects, by the said company, and under their authority, pursuant to such rules, regulations and by-laws as said company shall enact and pass by two thirds of the votes of the proprietors.

" Sect. 5. Said company shall keep fair and particular accounts of all the lime-rock that shall be dug, taken, burned or disposed of by them, and under their authority, and of the proceeds thereof, and of all the expenses attending the same, and shall, once in every year, and oftener if thereto required by two thirds of the votes of the proprietors, make a dividend and dis-

tribution of the profits of the business among the said proprie-
tors, in proportion to their right and interest therein, and said
accounts shall at all times be open to the examination of the
members of said company.

"Sect. 6. All executions that shall issue against said com-
pany shall be levied on said lime-rock, or on any other prop-
erty, whether real or personal, belonging to said company.

"Sect. 7. Said company shall annually hold a meeting on
the —————— in every year, and at such other times as they may
judge convenient, and at such annual and other meetings may
appoint agents and such other officers as they may deem neces-
sary for the management of their business, and the members of
said company may vote in said meetings either personally or by
proxy.

"Sect. 8. The aforegoing act shall be subject to all acts of
the General Assembly, either in amendment or repeal thereof."

The Dexter Lime-Rock Company being thus formed, one
hundred and seventy-six shares, out of the three hundred and
fifty-two shares into which its property was divided, were by
agreement set off to Christopher C. Kelly, assignee to C. C. Dex-
ter and Amey Dexter, who conveyed them by several deeds, in
parcels, to the present members of the plaintiff corporation,
prior to October 28, 1856, on which day he reconveyed to his
assignors all his remaining interest in the assigned property,
including the Christopher Dexter farm, with such rights to
the lime-rock underlying the same, if any, of which he had
not been devested by his aforesaid conveyances.

Kelly's deeds of his shares in the lime-rock company recite
in terms, that the capital stock of the company comprises,
"The Dexter Ledge of Lime-Rock, so called, situated in said
Smithfield, the engines, apparatus and implements for working
the *quarries* and burning of lime, the kilns and appurtenances
thereto appertaining, and all the lands formerly held by the late
Christopher Dexter and John Dexter, in common, for the pur-
pose of building kilns and depositing lime-rock, wood or other
materials thereon, with all the rights, privileges and appurte-
nances in any way thereto appertaining."

The answers admitted, that the defendants, owners of the

Christopher Dexter farm, had quarried and were quarrying limestone underlying the same, being no part, as they claimed of the Dexter Ledge, so called; — the right to quarry which was admitted to be exclusively vested in the complainants.

Much testimony was submitted for the purpose of proving the extent and limits of what was called and known as the " Dexter Ledge of Lime-Rock," and concerning localities, and the working of the quarries by the former owners, which served to explain the descriptive parts of the deeds produced — and testimony was also submitted bearing upon the point of estoppel taken by the complainants; but as this is sufficiently stated in the opinion of the court, it is deemed unnecessary to recite it here.

*Thurston,* for complainants.

1. Parol evidence is admissible, to show the extent of the subject of a grant, where the language of the deed is not precise in defining its limits. *Doe* v. *Jackson,* 1 S. & M. 494; *Morrell* v. *Cook,* 35 Maine, 207; 1 Greenleaf's Evidence, § 365; *Seaman* v. *Hogeboom,* 21 Barb. 398; *Doolittle* v. *Blakely,* 4 Day, 265; *Atkinson* v. *Cummins,* 9 Howard, 479; 8 Bingham, 244. The term " Dexter Ledge of Lime-Rock," in the deeds of Kelly to the complainants, was the natural descriptive expression, signifying all the formation of that character upon the Dexter farms. No particular quarry or outcropping of limerock, on the Dexter farms, was ever known by the name of " Dexter Ledge." The principal localities from which the rock was taken, received special names, as the " Great Rock Hole," or " Great Ledge," and the " Little Rock Hole," or " Hackelstone Ledge," while, as above stated, the term "*Dexter* Ledge" was the comprehensive expression for the whole. Both the " Great Ledge " and the " Little Ledge," the one on the Jonathan, and the other on the Christopher Dexter farms, were, by the proprietors, after 1804, worked in common, and the rock taken from any place, on either farm, was called " Dexter Rock," and the lime burned from it was called " Dexter Lime."

2. Whenever the intention of the parties to a deed can be fairly ascertained, the court will carry it into effect if it can be

done consistently with the rules of law. *Bridges* v. *Wellington,* 1 Mass. 219; *Marshall* v. *Fisk,* 6 Mass. 31; *Pray* v. *Pierce,* 7 Mass. 381; *Litchfield* v. *Cudworth,* 15 Pick. 23; *Swartz* v. *Swartz,* 4 Barr, 353; *Frost* v. *Spaulding,* 19 Pick. 446; *Wise* v. *Wheeler,* 6 Iredell, 196; *Irwin* v. *United States,* 16 Howard, 513; *French* v. *Carhart,* 1 Comsts. Appeal Cases, 96; *Winslow* v. *Patten,* 34 Maine, 25; *Lincoln* v. *Wilder,* 29 Maine, 169. It was the intention of C. W. Kelly, assignee of C. C. and Amey Dexter, to separate the lime-rock rights from the other estate of his assignors, and to convey the whole of the same to the complainants; at least he intended to convey all his interest in the lime-rock, which had been formerly owned in common by Jonathan and Christopher Dexter. The chief object of procuring an act of incorporation, was to make the property salable, and also to prevent the difficulties which had been invariably experienced from the interfering claims of part-owners. The property could only be made valuable and attractive to purchasers by ridding it of the possibility of being affected by a ruinous spirit of competition in the sale of rock, that would continue, if other quarries of the same kind of rock could be opened in the same vicinity on these farms. That the intention of the parties in procuring the act of incorporation and in making the sales to the complainants was, to carve out the lime-rock property from the rest of the estate, is conclusively evidenced from the conduct and declarations of C. C. Dexter at the time. Such acts and declarations estop the defendants now to deny that the lime-rock, which the complainants purchased, extends into the Christopher Dexter meadow. Story's Equity Jurisp. § 384 et seq.; *Pickard* v. *Sears,* 6 Adolph. & Ellis, 469; *Gregg* v. *Wells,* 10 Ib. 90; *Neville* v. *Wilkinson,* 1 Brown's Ch. Rep. 543; *Hobbs* v. *Norton,* 1 Vernon, 136; *Pearsons* v. *Morgan,* 2 Brown's Ch. Rep. 388; *Evroy and Nicholas et al.* 2 Eq. Cases Abridged, 488; *Stone & Brooks* v. *Baker,* 6 Johnson's Chan. 166; *Savage* v. *Foster,* 9 Modern Rep. 37; *Hunsden* v. *Cheney,* 2 Vernon, 150.

3. There can be no doubt, from an examination of the whole of the instruments, that Jonathan and Christopher Dexter, in 1804, intended to make all that lime-rock on the farm of either,

which was in the language of geology, "rock in place," common property. The language of the description in each deed, is capable of supporting the conclusion that each was aware that the ledge on the farm of the one extended into the land of the other.

"The full one half of *all* the great ledge or hill of lime-rock situate in Smithfield aforesaid, on the homestead farm of the grantee, formerly of Nathan Dexter, and a little southerly from said grantee's dwelling-house, *which I have or ought to have*, together with one half of all the ledge of lime-rock lying easterly from said dwelling-house, and northerly from the drift-way leading from said great ledge to the lime-kilns." Deed. *Christopher* to *Jonathan*. And the same description occurs in the deed of Jonathan to Christopher, with the omission of the words "formerly of Nathan Dexter," and the substitution of "*grantor*" in the place of "*grantee*." The act of incorporation, embraced at least all that Jonathan and Christopher previously held in common, unless the words "all the Dexter Ledge of Lime-Rock, so called, situated in Smithfield," are construed to mean only the "Great Ledge" on the Jonathan Dexter farm. Attempts to fix settled boundaries to the extent of the Great Ledge, have been unsuccessful; and the theory that the name "Dexter Ledge" came to be applied exclusively to the Great Ledge, is wholly unsupported. It follows, that the defendants can save the quarry opened by them from being covered by the complainants' title, only by showing, that the rock at that place comes within the term "scattering rock," as used by Jonathan and Christopher Dexter, and is no part of the ledges on their farms.

4. If the confined construction, contended for by the respondents, be given to the deeds of Jonathan and Christopher Dexter, putting in common only certain portions of the lime-rock underlying their two farms, — those who succeeded to the rights of Jonathan Dexter, nevertheless, are entitled to one undivided half of the lime-rock in the east, or Christopher Dexter farm, by virtue of the deed from Samuel, son of William, to Jonathan Dexter, dated May 24, 1783. This would leave Barnes, Sayles, and Kelly, when incorporated in 1854,

proprietors in common of the Christopher Dexter farm, in precisely the proportions named in the act of incorporation ; and, necessarily, the defendants are infringing upon the complainants' rights.

*Weeden & Blake* for the respondents.

1. That if by continuation of lime-rock the plaintiffs mean merely similar strata without breach of subterranean connection, such continuation is of no avail for the plaintiffs even if their own view of the case were in other respects correct, because it is not a continuation of a great hill or ledge on the Jonathan Dexter farm, and is not " north of the drift-way."

2. If a legal title were established in the plaintiffs (which is however not admitted by defendants), to fractional shares in rock not included within the above limits, as tenants in common with the defendants, such title would not sustain the present suit; because one tenant in common cannot sustain trespass for, or injunction against, his cotenants, for a mere user of the common property, — a proposition too well established to need to be sustained by reference to authorities.

3. As to the title, or claim of title, offered by the plaintiffs, the defendants submit, at the same time denying the inference drawn therefrom by the plaintiffs ; first, such inference, viz : that Christopher and Jonathan Dexter owned in unequal proportions the said lime-rock after, or at the time of, the execution of their reciprocal deeds of March, 1804, as rebutted by the language of the deeds themselves ; second, said deeds, being reciprocal and concurrent and between the same parties, must be construed together, and would make each party equal owner whether he were so before the execution of the deeds or not, and would estop those holding under them from denying such equal ownership ; and the present parties are further estopped therefrom, by asserting such equal ownership in the petition for their charter quoted in plaintiffs' brief, and by dividing the shares of the stock equally between the persons representing the Christopher Dexter farm, and the Jonathan Dexter farm.

4. Although the deed of assignment of Christopher C. and Amey Dexter conveyed all their estate, the said Kelly conveyed

to the plaintiffs or their constituents only incorporated shares, carving them out from the estate; and his own construction of these conveyances is shown by his reconveying to the assignors all except the incorporated shares, with *warranty* against all claiming under him. His testimony as to any greater interest conveyed, or intended to be conveyed to the members of the company, or any less reconveyed to the assignors than the deeds import, would, if admitted, work a fraud upon the assignors, and particularly upon the defendants, the Walcotts, who are purchasers for an adequate consideration. For a similar reason, any declarations by parol made by Christopher C. with relation to the extent of the lime-rock conveyed or intended to be conveyed, even if made, (which is not admitted;) could not bind his co-owner, Amey Dexter, nor the present defendants, not privy thereto.

5. The construction claimed by plaintiffs of the deeds and documents in question, that the area of lime-rock granted included all such rock on both farms as is of similar or continuous strata, in the probable case that such underlies both farms, would, if not limited as the defendants insist, involve the granting of an *easement* in the fee coextensive with, and destructive of, the fee itself. That such an intention was entertained by any grantor, or understood by any grantee, certainly cannot be presumed, and indeed is insensible and absurd. The grantors in the deeds where scattering rock is reserved undoubtedly meant rock not included in the hill, or hill and ledge, as by them located.

6. The act of incorporation is the grant, and must be interpreted by the rules applicable to wills, or to any other grant or written contract; and where there is a subject-matter upon which a will or grant may take effect, construing the words in their ordinary sense, parol evidence is not admissible to prove that the words were used in a more comprehensive sense, or in *other words to extend the grant.* *Doe* v. *Lyford*, 4 M. & Sel. 550; *Miller* v. *Travers*, 21 Eng. Com. Law R. 288; 8 Bingham, 244; *Doe* d. *Oxenden* v. *Chichester*, 4 Dow. P. C. 65, 3 Taunton, 147; *Tucker &c.* v. *Seamen's Aid Society*, 7 Met. Rep. 188; 2 Starkie's Ev. 560, 924; *Doe* d. *Hiscocks* v. *Hiscocks*, 5 M. & W. 362;

*Jackson* v. *Sill*, 11 Johns. Rep. 201. That there is no differ-ence in the rules of interpreting wills and written contracts. 1 Greenl. Ev. § 287.

The complainants are not entitled to a *permanent* injunction, because their title has not been established at law; and not to a *temporary* injunction, because they have long neglected to take any steps for obtaining a decision at law in support of their title; and because the defendants are, and long have been, in possession, claiming title, and denying that the complainants have any title. *Pillsworth* v. *Hopton,* 6 Ves. 51; *Chesapeake & Ohio Canal Co.* v. *Young,* 3 Miller, 480.

BRAYTON, J. The right of the plaintiffs to the injunction which they ask depends upon their title to the lime-rock, locally situate on the land of the defendants, where they are now digging, and propose to continue digging lime-rock. If they establish their claim to the exclusive right to the rock, the defendants must be enjoined from further excavating, burning, or using the limestone there.

The right to the rock has never been conveyed to the corpo-ration by deed executed by the owners of such lime-rock; but the plaintiffs claim, that the title to the premises in question vested in them by the act of incorporation, which declared what should be capital stock. The charter declares, that certain lime-rock shall constitute the capital stock, and that it shall be owned by the petitioners or corporators in the same proportion as they owned the rock at the time they petitioned. The ques-tion is, what was the extent of that lime-rock which was made capital stock, and as owners of which the petitioners asked to be incorporated. The plaintiffs say, that the corporate stock included all the lime-rock then upon either of the farms owned by the petitioners; that the intent was to include in such stock all the lime-rock, and the right to dig and take the lime-rock upon both farms which was held by the petitioners in common, and that it included the lime-rock at the defendant's present quarry.

The defendants say, that not only was no lime-rock upon the Christopher Dexter farm included, but that nothing was included and made corporate property by the act of incorpora-

tion, except the great ledge or hill of limestone ; and that was wholly upon the Jonathan Dexter farm ; that the petitioners prayed to be incorporated only as they were owners in common of so much lime-rock as was called and known by the name of the Dexter Ledge of Lime-Rock ; and that no other lime-rock was called or known by that name except the hill of lime-rock which did not extend into the Christopher Dexter farm, and the charter declares no other lime-rock to be corporate property.

Had the term " Dexter Ledge of Lime-Rock," as used in the charter, acquired a settled definite meaning, well understood in the community as including certain lime-rock of definite extent, and excluding all other, we should be obliged to hold that such lime-rock only was covered by the charter, and we could not consider any general intent of the corporators to have included more, or to have included less. If the term so defined and settled had included the hill of lime-rock upon one farm only, the charter could have included no rock on the other farm..

In looking at the testimony submitted as to what was called or known by the name of Dexter Ledge of Lime-Rock, in connection with the language of the petitioners in their application for a charter, the defendants fail to satisfy us that the term Dexter Ledge of Lime-Rock was, in the contemplation of the parties, confined to the ledge on the Jonathan Dexter farm only, although the evidence shows, we think quite clearly, that that term was more generally applied to the great ledge or hill of lime-rock, and generally, to that ledge as the Dexter Ledge, yet that it was sometimes extended to the smaller, or Hacklestone Ledge.

It can hardly be claimed, if we regard the language of the petition and of the charter, that the parties to the act of incorporation intended to limit the charter to the great ledge. The language very clearly implies that they did not. The petition-ers say, that they are the owners in certain proportions of certain lime-rock, comprising, in the whole, all the Dexter Ledge of Lime-Rock ; that they had experienced a difficulty in the business of working the quarries, and defining the just shares of each to the rock taken therefrom. They speak of quarries, in the plural, and not of one quarry only. There was at the

great hill or ledge but one quarry. There was another, and but one other, at the smaller, or Hacklestone Ledge. Both the quarries had been at some time worked in common. These quarries are spoken of in connection with the Dexter Ledge of Lime-Rock, and as parts of the Dexter Ledge which were owned in common. They must have understood that the rock at both pits was included in the Dexter Ledge, the difficulties in the working of which they desired to obviate by this legislative act.

The plaintiffs claim even more than the two quarries, and that the act of incorporation included all the lime-rock of the same formation as the rock at the quarries, to whatever point it might be continued, and that the term, Dexter Ledge, included all such rock, wherever it might be.

Our inquiry should naturally be, what was called and known as the Dexter Ledge of Lime-Rock? How extensive was the rock, called and known by that name? The plaintiffs have offered no evidence upon this point, except in rebuttal of that offered by the defendants to show that it was confined to the great hill of limestone. That which they did produce was merely to prove that no locality was known by that name; but it failed to prove that that term was ever used in the indefinite sense here claimed, as including all the rock of the same formation with that at the quarry opened. There is no witness who says this, or that the term was ever applied in fact to more than the two quarries thus open, the one on the Jonathan Dexter farm, the other on the Christopher Dexter farm, both of which had been worked by the Dexters, and owned in common by them. No witness says that it was ever applied to the Briggs Ledge, on the west part of the Jonathan Dexter farm. To determine, however, the extent of the plaintiffs' right to lime-rock on the Christopher Dexter farm, and whether it extended to the quarry opened by the defendants, it became necessary to determine the extent of the lime-rock owned by the parties to the act of incorporation, as tenants in common. The plaintiffs say that this is to be ascertained by the mutual deeds executed by Jonathan and Christopher Dexter in 1804; and the question arises, what interest passed to the respective

31 *

parties upon the proper construction of these deeds. These deeds should be construed in the light of all the circumstances surrounding the transaction in order fully to understand the application of the language used, and determine the sense in which it was used. From the exhibits and proofs in the cause, it appears that one John Dexter, in 1761, was the owner of both these farms. He had, in 1753, leased for the term of ninety-nine years a portion of the great ledge or hill of lime-rock to certain parties, ten rods in breadth extending through the hill, and had in this lease reserved the right to dig lime-rock sufficient for the use of one kiln, then proposed to be built upon his own land. He covenanted not to dispose of any other lime-rock which might be obtained from the farm, to the injury of the lessees who had the right to dig and burn lime during the lease. John Dexter, in 1761, divided this farm into two parts, giving to Jonathan, his son, one of the parties to the deed of 1804, the westerly part, and at the same time granting the free liberty to dig limestone for burning lime on the other, or easterly part. On the same day he conveyed to William Dexter, another son, the easterly part, with like free liberty to dig lime-rock upon the farm given to Jonathan. The right and title of William Dexter seems to have passed by several mesne conveyances to Christopher Dexter, the other party to the deeds of 1804. In 1804, when these deeds were executed, there was a hill situated upon the westerly, or Jonathan Dexter farm, a little southerly of the dwelling-house, descending easterly and coming to the level before reaching the westerly line of the Christopher Dexter farm, and situate wholly on the Jonathan Dexter farm. This hill was composed of lime-rock, and was, according to the testimony of the witnesses, from thirty to forty or fifty feet above the general level of the land, and had been excavated extensively, some parts of it below the surface, and there was a drift-way leading from the place where the hill had been excavated, easterly, to certain lime-kilns upon the Christopher Dexter farm. To the eastward of the dwelling-house of Jonathan Dexter, and upon the Christopher Dexter farm, and north of the drift-way and coming up to the side of it, was an open quarry of lime-rock. This

had been excavated to a considerable depth below the surface; and though the rock at the way rose to the surface, there was no elevation here of the land or of the rock.   There was also upon the westerly part of the Jonathan Dexter farm another quarry of lime-rock, called the Briggs Ledge, which does not appear to have been worked at any time, by Christopher Dexter, or by his predecessors.

The plaintiffs claim, that by these mutual deeds between Jonathan and Christopher Dexter, Christopher Dexter conveyed to the said Jonathan one half of all the lime-rock upon his the said Christopher's farm which was what is termed by geologists "rock in place," as distinguished from boulders or detached rock removed from the place of its original formation; that by the term, Great Hill or Great Ledge of lime-rock, situate on the homestead farm of the grantee a little southerly of the grantee's dwelling-house, all the connected rock of that formation of limestone passed, wherever it might extend, whether upon the grantee's farm, or upon land of the grantor.

The claim of the plaintiffs is founded upon the assumed sense in which the term, Great Ledge, was used in these deeds. They claim that it was used in the sense, and with the definition, of *layer*, or *stratum* of limestone, and therefore included all of the layer or stratum which is continuous and unbroken, of which the hill is part; and as this formation extends into the Christopher Dexter farm, and under the meadow where the defendants are now working, the rock there passed also.

We may assume for this purpose, that the same formation extends from the great hill to the pit or quarry of the defendants, and we think the evidence shows that the rock in both places is of the same formation.   But it does not aid the plaintiffs in the construction of the deed.   If we substitute the definition of the word ledge, as claimed by them, for the term itself, we still meet with the same difficulties.   We then have the one half of a great layer or stratum, or hill of limestone, upon the grantee's farm, a little southerly of his dwelling-house. Some significance must be given to the term "hill of limestone;" for it is evidently used as synonymous with ledge, and as descriptive of the subject.   If the parties intended to include

the whole formation, and to extend beyond the hill easterly and indefinitely, the word, hill, ceases to have any meaning, and must be rejected ; and so we must also reject that part of the description which describes it as situate southerly of the dwelling-house ; for this would give it a location easterly as well as southerly from the house, and include the smaller ledge which is described to be situated easterly ; and we should be driven one step farther, that is, to reject that part which describes the lime-rock conveyed as being upon the grantee's farm.   The description then would be simply, the one half of a great stratum or layer of lime-rock, without any locality, — a description so indefinite that parol proof alone could ascertain what was granted, or intended to be.

It is said, indeed, that the parties understood at the time that the formation at the great ledge extended into the Christopher Dexter farm and perhaps entirely across it, and included the smaller or Hacklestone Ledge also, and therefore it must be presumed that the parties intended to convey to each other all their property in the entire formation.   They might well enough have presumed that the lime-rock at the great hill extended to the smaller or Hacklestone Ledge, for the distance between them was very small, and that they were both parts of the original formation, though the parties were probably little versed in geology, and it is at least doubtful if they were familiar with the term "rock in place," as used by geologists. There was less indication of lime-rock at the meadow where the defendants now work, or that the formation extended there, since no pit had been opened ; and we cannot determine whether they did, or did not, have the opinion imputed to them as to the actual extent of this lime formation.   But suppose they had.   This does not relieve the difficulty, for the question immediately forces itself upon us, why should they, if they intended to convey the whole, use such description as is appropriate to a part only ?   Why use the term "hill" at all, or describe it as upon one farm only, when it was in fact upon both, or as southerly of the dwelling-house, when it extends far to the east, and even in that view most probably included the position of the dwelling-house itself ?   But the descriptive part

of the deed certainly leaves us to imply that the deeds were not made upon any such opinion. There were two subjects of grant in these deeds. The great ledge is treated as one, and the ledge situated easterly of the dwelling-house is treated as another, distinct subject. This last is situate (so the deeds say) north of a drift-way leading to the first, viz., the great ledge or hill of lime-rock; indicating that the great ledge was intended to be described, as local and including only lime-rock on the Jonathan Dexter farm, and not the lesser ledge, along the southerly side of which the drift-way led. And, upon the whole, we are driven to one of two conclusions, either of which is fatal to the plaintiffs' view; either, that they considered at the time the lime-rock at the great ledge, and that at the smaller ledge, easterly of the dwelling-house, as different formations, or else that they intended to describe and convey different and distinct portions of one entire formation; and it is quite immaterial which view be taken. This is the more apparent from the description given of the several subjects of grant. It is, one half of the ledge of lime-rock lying easterly of the grantee's dwelling-house, and northerly of the drift-way leading to the great ledge. By no rule of construction can this grant be carried south of the drift-way. It would be a perversion of terms to do so. The drift-way is to be the southern boundary of this second parcel of lime-rock, regardless of the extent of the formation of which it might be part.

The defendants on their part say, that the term ledge, as here used, includes the idea of prominence or projection, either upwards, when it is sometimes called a ridge, or projecting horizontally,—jutting out from,—and therefore the term is here used in the sense of *hill* or *elevation* of lime-rock; and so every separate hill, or elevation of lime-rock, may be termed a ledge, within the meaning of that term as here used by the parties. The description of the first subject of the grant evidently does include this idea of a prominence of rock; but in the description of the second subject the idea of elevation, or ridge of rock, is as evidently excluded. This locality had no prominence or elevation. It was on the general level of the land, and though the lime-rock originally came to the surface, and still did at the

drift-way, it had long before been excavated far below the surface elsewhere. The term here did not mean hill, ridge, or elevation of rock, but simply a body of lime-rock, lying easterly of the house and north of the drift-way, — all the rock there. It is indefinite in extent, except that it does not extend west of the house or south of the way. It is difficult to give this term, ledge of lime-rock, as used in reference to both subjects of the grant, any other meaning than, a body of connected lime-rock, whether hill or valley or upon the general level with the land, and reconcile it with the language here used by the parties. The terms, great ledge or hill of lime-rock, must be construed to be, all that body of connected lime-rock locally situate southerly of the dwelling-house of Jonathan Dexter and upon his farm, and not extending beyond it easterly. But at the same time, the term, ledge, applied to the other subject of grant, since there are no words limiting it except the drift-way on the south, may be used in the larger sense, as including all the body of connected lime-rock upon the grantor's land which lies north of said drift-way.

This construction would not include the meadow south of the drift-way, and easterly of the Jonathan Dexter farm, where the defendants are now excavating rock. It has been suggested that by this construction no effect is given to the reservation contained in the deed, viz.: " always excepting and reserving to myself, my heirs and assigns, all the scattering rock which is, or may be found upon my farm ; " and the plaintiffs say, that this reservation shows that the grantor did not design to retain to himself any of the rock in place, so called, but detached rock only, what geologists term boulders, rock removed from the original formation and separated from the mass of connected rock. It may be said in regard to this, what could not have escaped the notice of counsel, that in the extended sense which he would give to the term in the deed, as conveying all the rock in place upon the grantor's farm, the loose rock or boulders can in no proper sense be included. It is no exception to anything which could have passed by the general description in the deed ; boulders could not with any propriety be deemed, in any sense, rock in place. Looking at it in this light, the exception

is simply inoperative, and that equally, whether the rock in place described in the deed be upon the grantee's farm only, or be extended into the land of the grantor. But it may be said also, what is apparent from this deed, that Christopher Dexter did clearly grant a connected body of lime-rock locally situate upon his own farm by the description, " ledge of lime-rock situate easterly of the dwelling-house and north of the drift-way." If the terms of the reservation are to be considered as excepting anything which could otherwise pass and as excepting part of the rock described, and " detached rock ". is an exception from the grant of the ledge, full operation is given to the reservation in application to the rock granted north of the drift-way. It is said by the plaintiffs, in the argument, that the intent of these deeds was to make the parties equal as to their right to lime-rock on both farms. These deeds were made between father and son, and it would seem in anticipation of a conveyance by the father to another son, to whom he did convey his interest in 1809. At the time of the execution of the deeds, Christopher Dexter, the son, was the owner of the greater portion of the farm conveyed to William Dexter in 1761. It may be that he owned the whole. This is not made certain by the conveyances. The right granted to William Dexter to dig lime-rock from the western farm, if it vested in Nathan and Samuel, the sons, by the devise of the farm, had by the deed. of Nathan, in 1783, to Jonathan, become extinguished. Jonathan Dexter by the same conveyance acquired not a mere right to dig lime-rock, but a property in one half the lime-rock on the eastern farm, and in consequence thereof the mere right to excavate and take lime-rock from that farm, granted in 1761, became extinguished. The purpose of the deeds of 1804, as understood, and as the plaintiffs urge, was to define the rights of the parties, and to make their interest in the lime-rock equal; and it is apparent from the deeds themselves, that the equality was to be accomplished by vesting in the parties the property in the rock itself, and to make them tenants in common of all the rock in which they were to have an interest. To do this, some rights were to be created or granted anew, some to be released. That common interest in the rock on the western farm, designed

to be vested in Christopher Dexter, was to be newly granted by the deeds, and the deed of Jonathan does convey one half of the great ledge of lime-rock on that farm, he reserving, and Christopher agreeing that he shall retain, all the scattering rock then apparent or to be thereafter found on that farm; and since no rock is included in the description except the great hill of lime-rock, this reservation is, in effect, of all other lime-rock on that farm. Without the reservation the effect would be the same. Christopher Dexter's deed purports to convey to Jonathan, one half of the ledge of lime-rock lying north of the drift-way on his farm. It is at least doubtful if this deed conveys to Jonathan any greater right to lime-rock on the easterly farm than he before had. The deed to Nathan Dexter made to him in 1783, purports to vest in him one half of all the lime-rock on that farm. By the deed of 1804, the grant, instead of being a grant of one half of all the lime-rock, is limited to one half of the ledge. By these mutual deeds Christopher Dexter reserves to himself, and Jonathan agrees that he shall retain to himself all the scattering rock which then was, or which might thereafter be found upon his farm, — in effect all other lime-rock upon that farm, except what was described and purported to be conveyed.

It is claimed, further, that the acts and declarations of Christopher C. Dexter, about the time of procuring the charter and in endeavoring to effect a sale of shares in the corporation, estop, not only Dexter himself but all the defendants, to deny that the lime-rock incorporated extended to the place where they are now excavating. These representations, as charged, consist in representing that the rock of the corporation extended under the meadow and under the whole farm of which he was part owner. If the other parties to this act of incorporation have been by representations of the defendants misled to their injury, and upon the faith of such representations have been induced to vest their money or their property in the stock of this company, and must now suffer loss unless such representations are held to be true, the general rule of law would require that the defendants should be estopped to deny that they were true.

The objection in his case is, first, that the representations

The Dexter Lime-Rock Company *v.* Dexter & others.

were not made by all the defendants or by all of the owners of the rock claimed, but by one tenant in common only, and the remedy asked cannot be given without at the same time doing an injury to the other tenant in common, who is not responsible for the representations made, it would be in effect compelling A. to make good B.'s default. There is another objection, that while Christopher Dexter, one of the defendants, was making the representations here charged, other members of the corporation, and who became such by virtue of their ownership of lime-rock on the western farm, were making representations of precisely an opposite character, that no lime-rock upon the farm was designed to be made corporate property except the ledges then worked, and that it was not intended to include other lime-rock. There is a third objection: that whatever the representations were which were made by C. C. Dexter, it does not appear that the corporation, or any member of the corporation, was misled by them, or ever acted upon them, either in applying for the charter, or in the purchase of stock in the corporation.

The plaintiffs, having failed to establish their right to the lime-rock which the defendants are excavating, this bill, which prays that the defendants be enjoined from further excavating, must be dismissed with costs.